FILED
JUN 29 2026
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

**SHAHEEN SHAFII, SR.,**
*Plaintiff,*

*v.*

**CITY OF CHARLESTON, WEST VIRGINIA**;

**AMY GOODWIN,** in her individual capacity;

**SCOTT DEMPSEY,** in his individual capacity;

**TONY HAZELETT,** in his individual capacity;

**CHAD JONES,** in his individual capacity;

**TIFFANY POWELL,** in her individual capacity;

**DUANE FIELDS,** in his individual capacity;

**JONATHAN HILL,** in his individual capacity;

**ALEX BOBINGER,** in his individual capacity;

**BRANDON BURTON,** in his individual capacity;

**JENNIFER PHARR,** in her individual capacity;

**JOHN/JANE DOES 1-5,**
*Defendants.*

**Case No.** 2:26-cv-00431

VERIFIED COMPLAINT FOR DAMAGES & RELIEF.

JURY TRIAL DEMANDED.

## NATURE OF ACTION

1. Plaintiff brings this action under 42 U.S.C. § 1983 and West Virginia law seeking relief for First Amendment retaliation, seizure and malicious prosecution through fabricated process, deliberately defective notice, disclosure of confidential family and child-related records, municipal customs that caused those injuries, and related state-law torts.

2. Plaintiff does not ask this Court to review, reverse, modify, or supervise any state domestic or personal safety order judgments. Court records are pleaded only as supporting evidence of conduct, motive, causation, damages, and favorable termination of criminal process.

3. This complaint attaches only selected official-document exhibits necessary to show plausibility at the pleading stage. Plaintiff identifies the July 18, 2024 call transcript as Exhibit L because it is central to the fabricated-predicate allegations; Plaintiff will lodge the recording in the form directed by the Court. Plaintiff preserves additional records, recordings, witness materials, and impeachment documents for Rule 26 disclosures, discovery, motion practice, summary judgment, and trial, subject to redaction, sealing, and admissibility.

## JURISDICTION AND VENUE

4. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because the federal claims arise under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments.

5. This Court has civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3) and (4).

6. This Court has supplemental jurisdiction over the related West Virginia claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative fact.

7. Venue is proper under 28 U.S.C. § 1391(b). A substantial part of the events occurred in Kanawha County, West Virginia, and the principal municipal defendant is located in this district.

## PARTIES

8. Plaintiff Shaheen Shafii, Sr. is a resident of Kanawha County, West Virginia. He is a United States Air Force veteran, a citizen-critic of Charleston officials and law enforcement, a former candidate for Mayor of Charleston, and the founder and sole proprietor of Federal.Domains, a digital asset business.

9. Plaintiff personally built, funded, acquired, managed, controlled, and operated his digital asset business, Federal.Domains, through personally controlled accounts and related registrar platforms. Federal.Domains is a sole proprietorship and not a separate legal entity; Plaintiff personally owns its assets and personally suffered the injuries pleaded, and therefore has direct standing to recover them. Plaintiff pleads his own direct injuries from loss of possession, loss of access, loss of personal income, loss of capital, loss of renewal capacity, loss of business opportunity, and loss or impairment of the digital assets he personally built, funded, acquired, managed, or controlled.

10. Defendant CITY OF CHARLESTON, West Virginia is a municipal corporation and public body. It is sued under Monell for municipal liability and for supplemental state-law relief where permitted by law. Plaintiff does not seek punitive damages from the City.

11. Defendant AMY GOODWIN was, at all relevant times, Mayor of Charleston. She is sued in her individual capacity for her own direction, approval, receipt, ratification, or participation in intelligence activity directed at Plaintiff.

12. Defendant SCOTT DEMPSEY was, at all relevant times, Chief of the Charleston Police Department. He is sued in his individual capacity for his own command-level participation, approval, ratification, or direction in the Plaintiff-specific handling pleaded below, including his participation in the March 2024 blocked-complaint chain, the April 2024

Chief's-office extra-patrol/contact-reporting directive, and the April 2025 decision to close out Plaintiff's request after Fields tied the request to the pending PSO-violation case involving a City Council member. Plaintiff does not rely on Dempsey's title alone.

13. Defendant DUANE FIELDS was, at all relevant times, a Charleston Police Department detective, command-level investigative actor, or assistant-chief-level actor involved in Plaintiff-related communications, complaint handling, arrest coordination, record disclosure, and prosecution-related conduct. He is sued in his individual capacity.

14. Defendant TONY HAZELETT was, at all relevant times, a Charleston Police Department command officer and Investigative Services Bureau Chief. He is sued in his individual capacity for approving disclosure of confidential records and related conduct.

15. Defendant ALEXANDER BOBINGER was, at all relevant times, a Charleston Police Department intelligence officer. He is sued in his individual capacity for seeking intelligence or watch-list treatment of Plaintiff and building, transmitting, or circulating derogatory intelligence material about Plaintiff, and for executing the August 22, 2024 courthouse arrest of Plaintiff.

16. Defendant CHAD JONES was, at all relevant times, Director of the City of Charleston Department of Homeland Security and Emergency Management. He is sued in his individual capacity for obtaining and reporting an intelligence briefing concerning Plaintiff at the Mayor's request.

17. Defendant TIFFANY POWELL was, at all relevant times, a secretary or employee in the Mayor's Office. She is sued in her individual capacity for non-testimonial, out-of-court conduct undertaken through official City channels, including providing the false factual predicate that caused or contributed to criminal process against Plaintiff. Powell acted

under color of law because she made the report in her capacity as a Mayor's Office employee responding to Plaintiff's attempt to petition the Mayor, and her report was routed through official City and Charleston Police Department channels.

18. Defendant JONATHAN HILL was, at all relevant times, a Charleston Police Department detective or law-enforcement actor. He is sued in his individual capacity for advancing or maintaining criminal process without probable cause and for participating in defective-notice or fabricated-default events.

19. Defendant BRANDON BURTON was, at all relevant times, a Charleston Police Department officer. He is sued in his individual capacity for serving PSO I on or about April 23, 2024, for making the July 18, 2024 "See you on the street" surrender demand to Plaintiff, and for participating in or being copied on the August 2024 arrest-coordination communications.

20. Defendant JENNIFER PHARR was, at relevant times, a Charleston City Council member and personal-safety-order petitioner adverse to Plaintiff. Plaintiff alleges that Pharr's liability does not arise merely from filing a petition, requesting judicial relief, or testifying. Plaintiff sues Pharr under West Virginia law for non-testimonial, out-of-court conduct and post-issuance misuse of process, including conduct allegedly showing that process was used for collateral purposes of deterring Plaintiff's petitioning, criticism, City Hall access, and court presentation. Pharr's conduct is also pleaded as motive, context, municipal-custom, and joint-action evidence as to City and CPD actors. Plaintiff does not plead a present standalone federal claim against Pharr in this Complaint, and preserves any broader joint-action or enterprise theory for amendment if discovery and additional evidence support it.

21. JOHN/JANE DOES 1-5 are unknown officers, custodians, process actors, records personnel, clerks, municipal employees, county employees, or other actors whose identities will

be substituted after discovery, including any person who caused failed or defective service information in the refiled PSO-violation matter to be docketed, represented, or treated as successful service or adequate notice.

## RELEVANT NONPARTIES

*The following individuals are not named as Defendants in this Complaint. They are identified only because their conduct, communications, knowledge, or records are relevant to municipal custom, notice, ratification, motive, causation, background, or the identification of Doe Defendants. Plaintiff does not assert a standalone claim against any person listed in this subsection unless and until the Complaint is amended to name that person as a Defendant.*

22. Nonparty Jason Webb was, at relevant times, a Charleston Police Department command officer. His receipt, transmission, approval, or failure to countermand Plaintiff-directed intelligence activity is pleaded as municipal-custom, motive, notice, and ratification evidence.

23. Nonparties Gregory Lucas and Brian Griggs were, at relevant times, Charleston Police Department command officers. Their complaint-blocking, speech-targeting, command, or approval conduct is pleaded as municipal-custom, motive, notice, and ratification evidence.

24. Nonparty Brian Casto was, at relevant times, a process server for the Kanawha County Sheriff's Office. He is identified as a witness and process actor because, before the March 26, 2025 hearing, he confirmed with Plaintiff's power-of-attorney that Plaintiff did not reside at the address being used for service; service was nevertheless attempted at that defective address; and Plaintiff alleges the service return, docketing, or later treatment of that service created or contributed to the defective-notice problem. Plaintiff does not allege, without discovery, that Casto personally caused the court to treat failed or defective service as successful service.

## THRESHOLD DOCTRINE AND LIMITATIONS

25. Plaintiff seeks damages for Defendants' own conduct. The source of injury is retaliation, fabricated or baseless process, deliberately defective notice, blocked or chilled petitioning, disclosure of confidential records, proof impairment, property and business consequences, and municipal custom. State-court records are evidence of those injuries; they are not the judgments Plaintiff asks this Court to review.

26. Younger abstention does not bar this action. Plaintiff does not seek an injunction against an ongoing state proceeding. The personal-safety-order violation prosecution in Case Nos. 24-M20M-07499 and 25-M20M-01822 terminated by dismissal on June 18, 2026. To the extent any separate state matter remains pending, Plaintiff seeks damages for completed acts and, if necessary, a stay only as to any claim whose adjudication would interfere with that proceeding.

27. Rooker-Feldman does not bar this action because Plaintiff does not ask the Court to reject a state judgment. Plaintiff seeks damages for independent misconduct by Defendants.

28. *Heck v. Humphrey* does not bar the malicious-prosecution and fabrication-related claims because Plaintiff alleges no outstanding conviction arising from the personal-safety-order violation charge. The refiled PSO-violation matter terminated in Plaintiff's favor on June 18, 2026 when it was dismissed after the complaining witness had left the area and would not return to testify. Under *Thompson v. Clark, 596 U.S. 36 (2022)*, a § 1983 malicious-prosecution plaintiff need only show that the prosecution ended without a conviction; no affirmative indication of innocence is required. The witness-unavailability ground on which the charge was dismissed therefore satisfies the favorable-termination element.

29. The domestic-relations exception does not apply. Plaintiff does not ask this Court to enter, modify, or supervise family-court orders. Family-court events are pleaded only as evidence of Defendants' conduct, motive, causation, damages, and knowledge.

30. This action is not claim-precluded by Plaintiff's separate ballot-access action, No. 2:26-CV-00226. That action concerned the discrete issue of exclusion from the May 12, 2026 mayoral primary and was filed under emergency election conditions. This action concerns different conduct, different defendants in different capacities, different injuries, and claims that either were not litigated there or had not accrued when that action was filed or dismissed.

31. A related state-court matter concerning the November 3, 2022 leaving-the-scene incident proceeded from Judge Akers to the Intermediate Court of Appeals and is now fully matured before the Supreme Court of Appeals of West Virginia in Case No. 25-546, awaiting decision. Plaintiff pleads the 2022 incident and CPD's handling of it only as petitioning context, notice, motive, continuity, and background. Plaintiff does not ask this Court to review, enjoin, interfere with, or decide the pending state appellate matter or any claim belonging in that matter.

32. Claims based on arrests, seizures, malicious prosecution, fabricated process, confidential-records disclosure, and 2024-2026 retaliation are timely on their face. All § 1983 claims arising in West Virginia are governed by the two-year personal-injury limitations period, W. Va. Code § 55-2-12(b), regardless of whether the analogous state tort would carry a different state-law limitations period. State malicious-prosecution claims are pleaded as accruing on favorable termination, June 18, 2026. The abuse-of-process claim is limited to timely post-issuance misuse, continuing misuse through the prosecution's termination, and concealed misuse facts first produced on September 18, 2025, with earlier process conduct pleaded as

context, motive, and tolling evidence. To the extent any limitations period is measured from June 27, 2024, the last day fell on Saturday, June 27, 2026; under Fed. R. Civ. P. 6(a)(1)(C) and, to the extent state time-computation law applies, W. Va. Code §§ 2-2-1(d), 2-2-2(a), the period runs through Monday, June 29, 2026. Earlier events are pleaded as background, pattern, motive, damages context, discovery-rule facts, and continuing course of conduct; preserved to the separately actionable extent. Plaintiff pleads discovery rule, fraudulent concealment, and equitable tolling in the alternative, and only for the concealed coordination records the City did not produce until September 18, 2025.

33. Plaintiff expressly limits emotional-distress damages to garden-variety distress, humiliation, fear, anxiety, speech chill, and loss of ordinary enjoyment. Plaintiff does not plead a diagnosed psychiatric injury and does not place privileged mental-health treatment at issue.

34. Plaintiff does not seek damages for injuries belonging to his children. Children are pleaded only as non-party victims and as evidence of the risk, pressure, privacy invasion, and punitive-damages culpability Defendants created.

35. Plaintiff pleads the procedural history of PSO I, PSO II, and the related failure-to-appear events only to address preclusion, abstention, motive, causation, and damages. The June 27, 2024 personal-safety order (PSO I, No. 24-M20S-00200) was entered after Plaintiff appeared, but Plaintiff alleges it rested on materials and assertions he was not given a meaningful opportunity to inspect, test, or rebut at the hearing and that he later learned were insufficient or misleading. Plaintiff does not rely on Defendant Fields's nonappearance at the PSO I hearing as a standalone basis for liability, because the timing and circumstances of any subpoena service may provide Fields a defense. The later personal-safety-order matter (PSO II, No. 25-M20S-00344) is

distinct from PSO I. Plaintiff alleges that PSO II and the later failure-to-appear consequences were tainted by a separate notice/default problem: Plaintiff appeared at the courthouse, the magistrate saw or had reason to know Plaintiff was present, and the proceeding was nevertheless treated as a failure to appear after the magistrate retreated from the lobby interaction. Plaintiff does not ask this Court to review, set aside, or modify PSO I, PSO II, or any safety order; he seeks damages for Defendants' own non-immune conduct, and pleads this procedural history only to show the absence of a merits adjudication on the federal issues pleaded here and to separate the PSO I evidence-access problem from the PSO II/default-notice problem.

## STATEMENT OF FACTS

*Background is pleaded as pattern, motive, knowledge, and a continuing course of conduct that bears on the timeliness, causation, and municipal-custom allegations herein, and to preserve the factual matrix of which the actionable 2024-2026 conduct is a part. Plaintiff does not assert a standalone claim against the private actors named in this subsection in this pleading.*

**A. Background and Continuing Course of Conduct (2019-2024)**

36. Earlier events are pleaded to explain Plaintiff's damages, notice, motive, and the context in which the 2024-2026 conduct occurred. Plaintiff does not seek independent recovery for injuries that accrued more than two years before this complaint is filed except to the extent concealed acts are timely under the discovery rule, fraudulent concealment, or equitable tolling; in the alternative, those facts are pleaded as background, motive, municipal-custom evidence, and causation evidence for timely claims.

37. One recurring background event was a November 3, 2022 leaving-the-scene crash involving Plaintiff's parked vehicle. Plaintiff contends that after the crash he identified Kaden Thomas as the suspected driver or suspect-vehicle source and repeatedly attempted to provide or

confirm evidence through CPD channels, including efforts to reach Cpl. Cart and later complaint-routing channels involving the Mayor's Office. Plaintiff does not plead the November 2022 crash, any private-party theory concerning that crash, or the merits of the state appellate matter as standalone claims in this complaint. The incident is pleaded only to show the concrete subject of Plaintiff's petitioning activity, City and CPD notice of unresolved complaints, and the context in which Plaintiff later sought to speak with the Mayor.

38. In December 2022, a domestic-violence protective order (No. 22-M20D-01393) entered on December 19, 2022 removed Plaintiff from his home and office and severed Plaintiff from his digital asset business at the moment of its build-out; the business thereafter collapsed for non-renewal, the collapse documented in the registrars' own records, and the loss is relevant to damages.

**B. Protected Activity and Business Consequences**

39. Beginning no later than 2023 and continuing through 2026, Plaintiff engaged in protected First Amendment activity. He criticized Charleston officials and CPD, attempted to file criminal complaints, sought public records, complained to oversight bodies, attempted to address the Mayor and City Council, recorded and published video evidence, and declared his candidacy for Mayor of Charleston.

40. Plaintiff's recurring complaints included CPD's handling of the November 2022 leaving-the-scene matter. By April 2024, internal City and CPD communications reflected that command staff and the Mayor's Office were aware Plaintiff was upset about the lack of follow-up, that the Mayor's Office and Tiffany Powell had received complaint activity concerning the matter, and that updates about those complaints were being routed to Mayor

Goodwin and Chief Dempsey. [Exhibit M] Plaintiff pleads these facts for notice, protected-petitioning context, and the purpose of his later Mayor's Office contact, not to ask this Court to decide the crash case.

41. Plaintiff operated a digital asset business, Federal.Domains, whose holdings included domain names and other related digital artifacts. Platform records document thousands of digital assets across multiple registrars. Plaintiff pleads the existence and impairment of those digital assets as a damages category, not as a final valuation number. Plaintiff will prove the loss through registrar and platform records, payment records, lapse records, ownership/control evidence, comparable sales, appraisal evidence if necessary, and other admissible proof.

42. Plaintiff does not plead a fixed digital-asset fair-market-value number in this complaint. Plaintiff pleads documented acquisition and renewal costs, loss of access, loss of renewal capacity, lost opportunities, loss of time, and consequential business damages in amounts to be proven at trial and without double recovery.

**C. Speech Targeting and Intelligence Activity**

43. On November 1, 2023, after Plaintiff published allegations of CPD/KCSO harassment, CPD's Criminal Investigation Division circulated an official Officer Safety/Awareness intelligence bulletin describing Plaintiff's recording and posting of videos as category-A behavior warranting caution, while stating that Plaintiff had no warrants or pending criminal complaints. [Exhibit A]

44. On March 12, 2024, after Plaintiff submitted misconduct-reporting communications, an internal CPD chain involving Dempsey, Lucas, Griggs, Webb, and Hazelett identified Plaintiff by name, noted that he had not made a formal complaint but was "blasting us

on social media," and then blocked or suppressed the reporting communication while acknowledging a "freedom of speech issue" and shifting responsibility upward by the instruction to "put it on me." [Exhibit B] Plaintiff pleads this as protected-activity notice, retaliatory motive, and municipal-custom evidence. Plaintiff acknowledges Defendants may argue IT/security concerns; the constitutional significance pleaded here is that CPD command recognized the First Amendment issue and nevertheless blocked or suppressed a citizen-critic's complaint channel.

45. On April 21, 2024, "in reference to the Chief's email about Shaheen Shafii," CPD command directed extra patrols at Councilwoman Pharr's residence day and night for two weeks and instructed officers that if they came into contact with Plaintiff, someone from the Chief's office should be contacted. Dempsey and Webb were copied on the chain. [Exhibit C]

46. On April 22, 2024, Defendant Bobinger emailed nonparty Webb to request the Fusion Center add Plaintiff's social-media accounts to a watch-list or intelligence framework. Plaintiff alleges CPD treated a citizen-critic's protected speech as a security issue. [Exhibit D]

47. In April and May 2024, Plaintiff's communications to CPD and Fields were blocked, delayed, or routed through City Attorney channels. Plaintiff continued reporting crimes, seeking assistance, and attempting to petition the City.

48. On April 23, 2024, Fields forwarded Plaintiff's materials to Dempsey and Webb and advised that Plaintiff was aware of the PSO and claimed he would be coming to Records to be served. On April 24, 2024, City Attorney Kevin Baker forwarded Plaintiff's email to Fields and copied Dempsey and Webb, stating that Plaintiff said he had tried to send the email to Fields but was blocked, and Baker requested to discuss the matter with Fields after review. [Exhibit N]

Those records show notice to City legal and CPD command that Plaintiff's complaint communications were being blocked or rerouted.

49. These acts chilled Plaintiff's speech, damaged his reputation, diverted time and resources from his business, increased his fear of arrest, and caused him to expend effort preserving evidence instead of earning income.

**D. Personal-Safety Order, Records Disclosure, and Arrest Timing**

50. In April 2024, Plaintiff attended a public Charleston City Council meeting and later contacted Councilwoman Pharr about the Mayor's avoidance of his complaints of police misconduct, including the unresolved November 2022 leaving-the-scene matter and related efforts to submit evidence or obtain follow-up. Public comment at City Council was the one forum in which Plaintiff could address the Mayor and the governing body directly and which City officials could not screen or refuse.

51. On April 21, 2024– four days after Plaintiff contacted Pharr about the Mayor's avoidance of his complaints, and fifteen days before the May 2024 primary and the last Council meeting at which Plaintiff intended to address the public– Defendant Pharr filed a petition for a personal-safety order against Plaintiff that characterized his attendance at the April 15, 2024 public Council meeting as harassment at her place of work. The petition alleged no physical violence and no unconsented physical contact. To the extent the petition characterized Plaintiff's rhetorical statement of political frustration ("when shit's burning down") as a threat, the statement was protected hyperbole and not a true threat. *Watts v. United States, 394 U.S. 705 (1969).*

52. On June 27, 2024, the magistrate granted the order (PSO I, No. 24-M20-S-00200) after Plaintiff appeared. Plaintiff alleges that PSO I was granted on materials or assertions he was not given a meaningful opportunity to view, test, or rebut at the hearing and that later proved insufficient or misleading. By its terms the order directed that Plaintiff "stay away from the place of employment ... of" Pharr- whose place of employment is City Hall, where she serves on the City Council- and that Plaintiff "not engage in electronic communication with the petitioner, including, but not limited to, direct and indirect social-media posts." [Exhibit E] Operationally, the order excluded Plaintiff from the seat of city government and the public forum in which he could petition the Mayor and the Council, and restrained his protected political speech about a sitting public official. PSO I expired by its own terms on June 27, 2025. Plaintiff does not base liability on Defendant Fields's nonappearance at that hearing.

53. Defendant Pharr's non-safety purpose is supported by non-testimonial conduct outside the courtroom: the timing of the petition after Plaintiff's City Council activity; her deletion of messages from the conversation she used to support PSO I; her request, relayed through Fields, concerning whether Plaintiff would be arrested before a hearing; the August 2, 2024 transmission of Plaintiff's complaint materials and child-related records to her personal Gmail; her acknowledgment in the August 22, 2024 lobby conversation of the exculpatory call recording; and the August 22, 2024 courthouse-lobby statements by Pharr and Fields to Plaintiff's power-of-attorney. Plaintiff pleads these facts as motive, joint-action, retaliation, and abuse-of-process evidence, not as liability for filing a petition or testifying.

54. Plaintiff had been critical of Mayor Goodwin, CPD, and City officials. He also communicated with Councilwoman Pharr about City matters and the Mayor's avoidance of his complaints.

55. On August 2, 2024, Defendant Fields asked Defendant Hazelett for approval to forward Plaintiff's own "Motion to Terminate Guardian" and related CPD complaint communications to Defendant Pharr's personal email account because, as Fields put it, "Jennifer wanted to show the judge the things [Plaintiff has] been asking." At 11:43 AM, Hazelett approved in writing, stating "I don't have a problem with it." [Exhibit F]

56. At 12:28 PM on August 2, 2024, Fields forwarded to Defendant Pharr's personal Gmail account, jenpharr27@gmail.com, an email captioned "FW: EVIDENCE– Stalking" that attached Plaintiff's own "Motion to Terminate Guardian." Bundled as an attachment-exhibit inside that motion were confidential CPS records concerning Plaintiff's minor children– a WV DHHR Family Functioning Assessment, FACTS Case No. 11690756. The confidential child-related records thus reached Pharr's personal Gmail as a bundled forward of Plaintiff's own filing, not as loose CPS files independently pulled by Fields. [Exhibit F, redacted]

57. The disclosure served no legitimate law-enforcement purpose. The transmitted materials were not presented to the judge at the hearing that day. The disclosure provided Plaintiff's police-complaint materials and confidential family/child-related information to a political adversary and litigation opponent, timed to a court proceeding. Lawful court presentation could have occurred through protective, in camera, subpoena, or court filing channels; forwarding the material to a private Gmail account placed it outside those safeguards.

58. On or about the same period, Fields communicated with other CPD personnel concerning Pharr's inquiry whether Plaintiff would be arrested before a hearing and concerning arrest timing. [Exhibit G]

59. On August 14, 2024, Charleston Police Department officers exchanged internal emails planning Plaintiff's arrest at the courthouse during Plaintiff's own personal-safety-order appeal hearing scheduled for August 22, 2024. [Exhibit G]

60. On August 22, 2024, at approximately 9:00 AM, Plaintiff arrived at the Judicial Annex for his personal-safety-order appeal hearing. After passing the security checkpoint, Defendant Bobinger and other CPD officers arrested Plaintiff on the PSO-violation charge (No. 24-M20M-07499) predicated on Defendant Powell's false account of the July 18, 2024 call. Plaintiff was publicly arrested, processed, and taken in handcuffs into the appeal hearing.

61. The August 22, 2024 arrest and courtroom sequence caused loss of liberty, public humiliation, reputational injury, emotional distress, increased legal burden, and impairment of Plaintiff's ability to present himself as a credible litigant and business owner.

**E. Mayor-Directed Intelligence Briefing**

62. On February 24, 2025, Mayor Goodwin met with the City's Director of the Department of Homeland Security and Emergency Management, Defendant Chad Jones, concerning Plaintiff.

63. On February 25, 2025, Jones emailed Defendant Fields, subject line "Shaheen Shafii": "I had met with the Mayor yesterday and she asked me to get with you and see if you could give me the run down on Mr. Shafii." [Exhibit H]

64. On February 26, 2025, after meeting with Fields at CPD that morning, Jones reported back to Mayor Goodwin and the Mayor's Chief of Staff: "Just a brief follow up from our conversation Monday about the three individuals: Shaheen Shafii– I met with Fields this morning and he filled me in on everything with Mr. Shafii," adding that City personnel had run

an individual through a law-enforcement database and had solicited security-company proposals. [Exhibit I]

65. Plaintiff alleges that the Mayor personally directed and received the results of an intelligence-gathering effort on a citizen-critic and eventual municipal candidate, conducted through the City's Homeland Security director and a CPD detective. That conduct supports retaliation, Monell final-policymaker or ratification liability, punitive damages against individual actors, and the causal connection between protected activity and adverse action.

66. On April 7, 2025, after Fields stated that CPD had spoken to Plaintiff at length about his complaints and that Plaintiff had an upcoming trial involving an alleged PSO violation with "one of our council members," Dempsey wrote that it was "safe to go ahead and close out" Plaintiff's request, that he could "attest to Duane's comments," and that CPD had accomplished all it could do with Plaintiff. [Exhibit Q] Plaintiff pleads this as command-level ratification, complaint-closure evidence, and evidence that CPD linked Plaintiff's request for redress to the Pharr-related criminal process.

**F. PSO-Violation Charge, Defective Notice, and Favorable Termination**

67. On July 18, 2024, Plaintiff telephoned the Mayor's Office in the course of attempting to petition the Mayor about unresolved CPD complaint matters, including CPD's handling of the November 2022 leaving-the-scene matter and related failures to accept, investigate, or act on evidence Plaintiff had attempted to provide. Plaintiff was a party to that call and pleads its content on personal knowledge. Plaintiff asked only whether Pharr was present, in order to confirm her absence so that his planned visit to petition the Mayor would not implicate the safety order; Defendant Powell answered that Pharr "doesn't reside at the city hall," and

Plaintiff explained he asked only because he "was wanting to come up and see if I could talk to the mayor." Plaintiff never requested to contact Pharr. Defendant Powell nonetheless reported to the Charleston Police Department that Plaintiff had "requested to talk to Councilwoman Pharr," inverting the call. The actual call recording disproves Powell's report. Plaintiff identifies the call transcript as Exhibit L; to the extent the Court's filing procedures do not permit the audio recording to be filed with the complaint, Plaintiff will lodge the recording in the form directed by the Court.

68. Also on July 18, 2024, Defendant Brandon Burton made a "See you on the street" surrender demand to Plaintiff, treating Plaintiff as a target for arrest in connection with the PSO-violation accusation predicated on Powell's report.

69. Defendant Fields acted on Powell's false statement and tasked a subordinate, Defendant Hill, to charge Plaintiff with a personal-safety-order violation in Case No. 24-M20M-07499. Plaintiff alleges Fields knew or recklessly disregarded that the factual predicate was false or unsupported by the available recording and circumstances, and that Hill authored the charge on Powell's false predicate without obtaining or reviewing the recording.

70. On or about March 5, 2025, the original charge (No. 24-M20M-07499) was dismissed and, the same day, the accusation was refiled under another statute as Case No. 25-M20M-01822. Hill later reported internally that an assistant prosecutor told him the charge had been filed under the wrong statute and needed to be refiled under W. Va. Code § 53-8-11; Hill then retyped and refiled the same factual accusation as a summons. [Exhibit P] Plaintiff pleads Hill's refile communication as personal-involvement and continuation evidence, while acknowledging that Defendants may argue prosecutor direction as an intermediary-causation or

reasonableness defense. The original and refiled charges were part of one continuous prosecution on a single factual predicate– Powell's inverted account of the July 18, 2024 call– that culminated in dismissal on June 18, 2026, which is the favorable-termination and accrual trigger for the seizures arising from both charges. *Manuel v. City of Joliet, 580 U.S. 357 (2017); McDonough v. Smith, 588 U.S. 109 (2019).* In the alternative, to the extent the August 22, 2024 arrest is analyzed as a discrete seizure, it is timely under West Virginia's two-year limitations period, W. Va. Code § 55-2-12, having occurred on August 22, 2024. Notice of the refiled charge was directed to an address known or confirmed to be defective.

71. Plaintiff alleges that the failed notice was not accidental or, at minimum, was recklessly converted into a basis for seizure. Before the March 26, 2025 hearing, the address used for the refiled charge was known or confirmed to be defective. A process server had confirmed with Plaintiff's power-of-attorney that Plaintiff did not reside at that address. Hill nevertheless refiled or advanced the charge using the defective address. Service was attempted at that defective address, and the return reflected failed service or a defective address. Despite that failed-service information, the docket later reflected successful service or otherwise treated notice as adequate.

72. Plaintiff did not receive lawful notice of the March 26, 2025 hearing. The wrong-address notice had failed, no adequate corrective service was made, and the proceeding nevertheless became the predicate for a failure-to-appear warrant and a second arrest. Plaintiff does not yet know who caused failed service to be docketed or treated as successful service. Plaintiff pleads that issue against Hill, John/Jane Does 1-5, and other process, records, clerk, or court-related actors to be identified in discovery. Plaintiff further alleges the default sequence in

a later PSO II involved a separate fabrication of a failure-to-appear after the magistrate observed Plaintiff present in the lobby waiting for the case to be called.

73. On July 9, 2025, in an internal email thread captioned "RE: False Reporting," Defendant Fields wrote to Defendant Hill that the recorded statement was "contrary to what Tiffany told you" and that "that charge should be dropped if indeed that was all that was said." The prosecution nonetheless continued. [Exhibit J]

74. On June 18, 2026, the refiled PSO-violation charge in Case No. 25-M20M-01822 terminated in Plaintiff's favor when it was dismissed on the State's motion because the complaining witness had left the area and would not return to testify. The dismissal order recited that the "key witness has left the area and will not be returning to testify." Plaintiff alleges the misdemeanor limitations period bars refiling. [Exhibit K]

**G. Complaint Review, Concealment, FOIA, and Proof Burden**

75. In June 2024, Professional Standards Commander Bennett informed Plaintiff that he was required to brief the Chief of Police with details of conduct complaints so the Chief could make an informed decision whether to authorize an investigation into alleged officer misconduct. [Exhibit O] Plaintiff pleads this as command-notice and decisionmaking evidence; Plaintiff does not plead his own complaint submissions for the truth of every underlying accusation, but for notice, protected activity, effect on the listener, chronology, and contemporaneous consistency.

76. Plaintiff did not possess the internal CPD emails, approval records, and City communications when the conduct occurred. Those records were concealed from Plaintiff and delayed in later FOIA production.

77. Plaintiff submitted a FOIA request to the City on July 28, 2025. The City did not produce the key responsive records until September 18, 2025.

78. The production revealed the intelligence targeting, disclosure, arrest-coordination, Mayor-directed briefing, rerouting of communications, and other facts Plaintiff could not fully plead earlier with documentary support.

79. Plaintiff alleges that Defendants' concealment and delayed production increased the cost and difficulty of proving his claims, extended the period of injury, and contributed to loss of business opportunity and legal burden.

## CLAIMS FOR RELIEF

**COUNT I: 42 U.S.C. § 1983 – First Amendment Retaliation Through Timely Adverse Acts**
*Against Dempsey, Fields, Hazelett, Bobinger, Burton, Jones, and Goodwin*

80. Plaintiff incorporates the factual allegations above.

81. Plaintiff engaged in protected First Amendment activity by criticizing Charleston officials and CPD, recording and publishing law-enforcement activity, attempting to file criminal complaints, seeking public records, complaining to oversight bodies, attempting to address the Mayor and City Council, and running for Mayor.

82. Count I is pleaded as a lean timely-retaliation count. It does not ask the Court to treat every intelligence communication, every PSO event, or every background fact as a standalone federal violation. The independently actionable adverse acts for this Count are: the July 18, 2024 surrender demand; the August 2, 2024 disclosure of Plaintiff's complaint and family/child-related materials to Defendant Pharr's personal email account; the August 2024 courthouse-arrest coordination; the August 22, 2024 courthouse arrest; and the February 2025

Mayor-directed intelligence briefing. Earlier 2023 and early-2024 events are pleaded as motive, notice, custom, and ratification evidence, and as independently actionable only to the extent discovery rule, fraudulent concealment, or equitable tolling applies.

83. Defendant Dempsey participated in and ratified the retaliatory course through command-level actions and decisions rather than through rank alone. He participated in the March 2024 blocked-complaint chain identifying Plaintiff and his social-media criticism, was copied on the April 2024 Chief's-email extra-patrol/contact-reporting directive concerning Plaintiff, received City Attorney notice that Plaintiff had tried to send Fields complaint materials but was blocked, and later closed out Plaintiff's request after Fields linked the request to the pending PSO-violation trial involving a City Council member.

84. Defendant Burton participated in the retaliatory course by making the July 18, 2024 "See you on the street" surrender demand in response to the charge predicated on Powell's false report, and by participating in or being copied on arrest-coordination communications concerning Plaintiff's courthouse appearance.

85. Defendant Fields used investigative, disclosure, and prosecution channels as retaliation mechanisms. He acted on Powell's false report, tasked Hill to charge Plaintiff, discussed or participated in arrest-timing communications, caused Plaintiff's complaint and child/family-related materials to be sent to Pharr's personal Gmail, and later acknowledged that the recording contradicted Powell's account and that the charge should be dropped if the recording reflected Plaintiff's account.

86. Defendant Hazelett personally approved the August 2, 2024 disclosure to Pharr's personal Gmail account, despite the obvious litigation, privacy, and petitioning context.

87. Defendant Bobinger participated in the City's treatment of Plaintiff as a security/intelligence subject, including the Fusion Center/watch-list request and the courthouse arrest sequence. Count I does not rest on Bobinger's mere presence as an arresting officer; it rests on the pleaded combination of intelligence targeting, arrest coordination, and execution of a preplanned courthouse arrest of a citizen-critic during his own court appearance.

88. Defendant Jones obtained the "run down" on Plaintiff from Fields at Mayor Goodwin's direction and reported back to the Mayor and her Chief of Staff about Plaintiff, including law-enforcement database/security activity.

89. Defendant Goodwin personally directed, requested, received, approved, or ratified intelligence gathering concerning Plaintiff, a citizen-critic and municipal candidate, as reflected in the February 25 and February 26, 2025 City communications.

90. These acts would deter a person of ordinary firmness from continuing to criticize, petition, complain, seek records, appear at City Hall, or participate in local politics.

91. The acts were causally connected to Plaintiff's protected activity. The City's own records repeatedly tied Plaintiff to criticism, social-media publication, complaint activity, Pharr-related political conflict, City Hall access, and election/civic participation. The timing and sequence support a plausible inference that protected activity was a but-for cause of the adverse actions.

92. As a direct and proximate result, Plaintiff suffered speech chill, petitioning chill, loss of liberty, reputational injury, legal burden, fear, humiliation, loss of time, and business interruption. The individual defendants acted maliciously or with reckless indifference to Plaintiff's constitutional rights, entitling Plaintiff to punitive damages against them.

**COUNT II: 42 U.S.C. § 1983 – First Amendment Retaliation Through Fabricated Criminal Process and Interference with Petitioning**

*Against Powell, Fields, Hill, and Burton*

93. Plaintiff incorporates the factual allegations above.

94. Count II is the focused retaliation-through-criminal-process count. It rests on the July 18, 2024 Mayor's Office call, Powell's false report of that call, the resulting PSO-violation charge, the surrender demand, the courthouse arrest sequence, the refiled charge, and the continuation of the prosecution after exculpatory information showed the predicate was false.

95. Plaintiff called the Mayor's Office to determine whether he could safely come to City Hall to petition the Mayor about unresolved CPD complaint matters, including the November 2022 leaving-the-scene matter, without violating PSO I. The recording shows that Plaintiff asked whether Pharr was present, Powell answered that Pharr "doesn't reside at the city hall," and Plaintiff explained that he asked because he "was wanting to come up and see if I could talk to the mayor." Plaintiff did not ask to speak with Pharr.

96. Powell nevertheless reported that Plaintiff had "requested to talk to Councilwoman Pharr," converting a question designed to avoid contact into an alleged request for prohibited contact. The false distinction was material because the charge depended on treating Plaintiff as having sought contact with the protected person.

97. Fields adopted or acted on Powell's false version and tasked Hill to charge Plaintiff. Hill authored or advanced the charge without obtaining or reviewing the exculpatory recording. Burton pressed the surrender/arrest posture on the same day through the "See you on the street" demand.

98. The fabricated charge and the resulting arrest/prosecution burden would deter a person of ordinary firmness from petitioning the Mayor, appearing at City Hall, criticizing City officials, filing complaints, or participating in local politics.

99. The charge lacked probable cause after correction of the false statement and inclusion of the omitted recording. Correctly stated, the call showed Plaintiff attempted to avoid contact with Pharr while seeking access to the Mayor; it did not show a request for contact with Pharr.

100. Because probable cause was absent, Count II does not depend on the narrow Nieves exception. In the alternative, the preplanned courthouse arrest, the arrest-timing communications, the unusual use of a City Hall inquiry as a criminal predicate, and Fields's later written acknowledgment that the recording contradicted Powell supply objective evidence that the prosecution and arrest were not ordinary enforcement decisions but retaliation for protected activity.

101. Count II does not seek review, reversal, modification, or supervision of PSO I or PSO II. The safety-order records are pleaded only as context, motive, causation, and damages evidence. The federal injury pleaded in Count II is the retaliatory use of a fabricated criminal predicate and resulting process to punish and deter petitioning.

102. Powell acted under color of law because she made the report as a Mayor's Office employee responding to Plaintiff's effort to petition the Mayor, and because her report was routed through official City and CPD channels. Fields, Hill, and Burton acted under color of state law as CPD actors.

103. The right to be free from retaliation for petitioning government, and from criminal process initiated or continued on a knowingly false factual predicate, was clearly established before 2024.

104. As a direct and proximate result, Plaintiff was chilled from petitioning City officials, publicly arrested, burdened by criminal process, damaged in reputation, impaired in business activity, and subjected to fear, humiliation, and legal burden. The individual defendants acted maliciously or with reckless indifference, entitling Plaintiff to punitive damages.

**COUNT III: 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure Pursuant to Fabricated or Materially Defective Legal Process**

*Against Powell, Fields, Hill, Bobinger, Burton, and John/Jane Does 1-5*

105. Plaintiff incorporates the factual allegations above.

106. Count III is the principal Fourth Amendment claim. It is pleaded in two related but distinct parts: Part A concerns the July 18, 2024 false-call predicate that caused the PSO-violation charge and the August 22, 2024 courthouse arrest; Part B concerns the known wrong-address notice/default sequence that caused the March 26, 2025 failure-to-appear seizure.

**A. The July 18 false predicate and August 22, 2024 seizure.**

107. Powell supplied the false factual predicate by reporting that Plaintiff requested to speak with Pharr when the recording shows that Plaintiff asked whether Pharr was present so he could avoid contact while attempting to speak with the Mayor.

108. The false statement was material to probable cause. The difference between asking whether the protected person is present to avoid contact and asking to contact the protected person is the difference between noncriminal avoidance and the alleged offense.

109. Fields directed, adopted, or transmitted the false predicate by acting on Powell's account and tasking Hill to charge Plaintiff. Hill authored or advanced the charge without obtaining or reviewing the recording. Burton participated in or pressed the arrest posture through the July 18 surrender demand and arrest-coordination communications.

110. Bobinger and Doe officers executed the August 22, 2024 courthouse arrest. Plaintiff pleads Bobinger's liability on the ground that he was not merely an officer encountering a facial warrant in the field, but part of the same documented Plaintiff-focused intelligence/arrest sequence and the officer who carried out the preplanned courthouse arrest during Plaintiff's own hearing.

111. Corrected to include the recording and to remove Powell's false characterization, the charging materials did not establish probable cause. A neutral decisionmaker presented with the actual call could not reasonably conclude that Plaintiff requested prohibited contact with Pharr.

112. Intervening prosecutorial or magistrate decisions did not break the causal chain because the intermediaries relied on the false predicate and were not presented with the exculpatory recording or the corrected call content. The causal chain remains intact where an officer or government actor misleads or materially omits facts from the intermediary.

**B. The known wrong-address notice/default sequence and March 26, 2025 seizure.**

113. The refiled charge was directed to an address known or confirmed to be defective. Plaintiff alleges that Hill, John/Jane Does 1-5, and process or records actors to be identified in discovery advanced, maintained, docketed, or allowed process to proceed as though notice was effective when it was not.

114. Before the March 26, 2025 hearing, a process server confirmed with Plaintiff's power-of-attorney that Plaintiff did not reside at the service address. Hill nevertheless refiled or advanced the charge using that defective address. Service was attempted at that defective address, and the return reflected failed service or a defective address. Plaintiff pleads these facts as evidence that the address defect was known before failure-to-appear consequences were imposed.

115. The failure-to-appear warrant would not have issued if the court had been accurately presented with, or correctly acted on, the failed-service information: Plaintiff had not been validly served at a correct address, and the known address defect had not been corrected. The later docket treatment of service as successful or notice as adequate was therefore material to the second seizure.

116. Notice was required to be reasonably calculated to apprise Plaintiff of the proceeding. A failure-to-appear arrest predicated on known defective address information, failed service, or an unexplained docket conversion from failed service to successful service is an unreasonable seizure when law-enforcement, process, records, or court-related actors knowingly or recklessly cause or allow the court to proceed on materially false notice information.

117. The PSO-violation prosecution terminated in Plaintiff's favor on June 18, 2026 when the refiled charge was dismissed without conviction after the complaining witness left the area and would not return to testify. Plaintiff alleges the one-year misdemeanor limitations period bars refiling of the same July 18, 2024 offense.

118. The right to be free from seizure based on legal process procured by a material falsehood, material omission, or known defective notice was clearly established. No reasonable

officer or process actor could believe it lawful to cause or maintain a seizure on Powell's inverted call account or on a notice representation known to be wrong.

119. As a direct and proximate result, Plaintiff suffered loss of liberty, handcuffing, public arrest, processing, hearing impairment, prosecution burden, reputational injury, business interruption, fear, humiliation, and legal expense. The individual defendants acted maliciously or with reckless indifference, entitling Plaintiff to punitive damages.

**COUNT IV: 42 U.S.C. § 1983 – Fourteenth Amendment Fabrication of Evidence**
*Against Powell and Fields, pleaded in the alternative to Count III*

120. Plaintiff incorporates the factual allegations above.

121. Count IV is pleaded only in the alternative under Rule 8(d), in the event the Court concludes that the liberty deprivation caused by Powell's and Fields's fabricated factual predicate is not fully governed by the Fourth Amendment.

122. Powell fabricated a factual predicate by falsely reporting that Plaintiff requested contact with Pharr when the recording shows that Plaintiff asked whether Pharr was present so he could avoid contact and speak with the Mayor.

123. Fields knowingly or recklessly adopted, used, and maintained that false predicate in the criminal process, and later acknowledged in writing that the recording was contrary to what Powell had told Hill and that the charge should be dropped if the recording reflected Plaintiff's account.

124. The fabricated predicate was used in the criminal proceeding, was material to the decision to charge and continue the charge, and caused Plaintiff's liberty deprivations until favorable termination on June 18, 2026.

125. This claim does not rest on testimony before a court, grand jury, or adversarial hearing. It rests on non-testimonial pre-process and investigative conduct that created and maintained the false predicate.

126. The right not to have liberty taken through a government officer's knowing fabrication of evidence was clearly established before 2024. Qualified immunity does not bar this alternative claim at the pleading stage.

127. As a direct and proximate result, Plaintiff suffered loss of liberty, legal burden, reputational harm, business interruption, and garden-variety emotional distress. The individual defendants acted maliciously or with reckless indifference, entitling Plaintiff to punitive damages.

**COUNT V: 42 U.S.C. § 1983 – Municipal Liability**
*Against the City of Charleston*

128. Plaintiff incorporates the factual allegations above and Counts I through III.

129. Plaintiff does not seek municipal liability under respondeat superior. The City is liable only for its own policy, custom, final-policymaker decision, or ratification that was the moving force behind a constitutional injury.

130. The predicate constitutional violations for Count V are the First Amendment retaliation pleaded in Counts I and II and the Fourth Amendment unreasonable seizures pleaded in Count III. The confidential-records disclosure is pleaded as evidence of custom, ratification, motive, and municipal notice, and as a state-law claim in Count VIII, not as the sole federal predicate for Monell liability.

131. Plaintiff pleads three municipal-liability theories, each in the alternative.

132. First, the City maintained a persistent Plaintiff-focused custom of treating a citizen-critic, petitioner, recorder, public-records requester, and municipal candidate as a security/intelligence target rather than as a citizen seeking redress. The custom is shown by repeated official acts across multiple City and CPD channels: the November 1, 2023 CID intelligence bulletin; the March 2024 complaint-blocking email chain acknowledging a freedom-of-speech issue; the April 2024 Chief's-email extra-patrol/contact-reporting directive; the April 22, 2024 Fusion Center/watch-list request; the April 23-24, 2024 Fields/Baker/Dempsey/Webb routing of Plaintiff's blocked complaint materials; the August 2, 2024 disclosure approval and personal-Gmail transmission; arrest-timing and courthouse-arrest coordination; the February 2025 Mayor-directed intelligence briefing; and the April 2025 Dempsey close-out decision.

133. Second, final municipal policymakers directed, approved, or ratified the challenged course. Plaintiff alleges that the Mayor is the City's chief executive and, under West Virginia municipal law and City practice, had final authority to direct or approve Mayor's Office, Homeland Security, and police-response activity concerning a citizen seeking access to the Mayor. Mayor Goodwin personally requested the February 2025 "run down" on Plaintiff, received the report back through Jones, and adopted or approved the treatment of Plaintiff as a security subject. That final-policymaker decision is independently sufficient at least as to later retaliation, chill, intelligence-targeting, and reputational injuries.

134. Third, CPD command and City legal/administrative channels ratified the course by approving and implementing the disclosure to Pharr, routing complaint communications through City Attorney channels, treating Plaintiff's protected activity as a security problem, requiring Chief-level authorization for misconduct investigations, closing out Plaintiff's request

after tying it to the Pharr-related criminal process, and continuing the process after City actors possessed or acknowledged information contradicting Powell's account.

135. Count V does not rely on a generic failure-to-train theory. Training, supervision, and record-handling defects are pleaded only as evidence that the City's custom and ratification made the injuries foreseeable and recurring.

136. The City's custom and ratification were the moving force behind Plaintiff's injuries because the same municipal course connected protected criticism, complaint activity, records handling, intelligence targeting, court-access restrictions, arrest timing, and criminal process into the adverse actions pleaded above.

137. As a direct and proximate result, Plaintiff suffered constitutional injuries, including speech chill, petitioning chill, loss of liberty, reputational injury, legal burden, privacy-related harm relevant to damages, business interruption, loss of time, and garden-variety emotional distress. Plaintiff does not seek punitive damages from the City.

**COUNT VI: State Common Law – Malicious Prosecution**

*Against Powell, Fields, and Hill*

138. Plaintiff incorporates the factual allegations above.

139. Defendants caused or procured a criminal proceeding against Plaintiff. Powell supplied the false factual predicate. Fields acted on that predicate, tasked Hill to charge Plaintiff, and continued or maintained process after the recording contradicted Powell. Hill authored, advanced, or maintained the charge and participated in the wrong-address notice/default sequence.

140. The prosecution lacked probable cause. The recording negated the only factual predicate for the PSO-violation charge, and the refiled-charge/default process rested on notice known or confirmed to be defective.

141. Defendants acted maliciously or for an improper purpose, including retaliation, intimidation, suppression of protected petitioning, and impairment of Plaintiff's court access. Malice may be inferred from lack of probable cause and from the continuation of process after exculpatory information showed the charge should be dropped.

142. The proceeding terminated in Plaintiff's favor on June 18, 2026 by dismissal without conviction in Case No. 25-M20M-01822. Plaintiff alleges the termination is final because the limitations period bars refiling of the same misdemeanor offense. To the extent West Virginia law supplies a one-year limitations period for state malicious prosecution, Count VI is timely because it accrued on that favorable termination.

143. The West Virginia Governmental Tort Claims and Insurance Reform Act does not immunize individual municipal employees for acts outside the scope of employment or for conduct undertaken with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiff alleges such conduct.

144. As a direct and proximate result, Plaintiff suffered loss of liberty, legal burden, reputational injury, business interruption, and emotional distress. Punitive damages are warranted against the individual defendants.

**COUNT VII: State Common Law – Abuse of Process**

*Against Fields, Hill, Powell, Pharr, and John/Jane Does 1-5*

145. Plaintiff incorporates the factual allegations above.

146. This Count is pleaded narrowly and in the alternative. It does not duplicate the malicious-prosecution claim by resting only on wrongful initiation of process. It rests on alleged post-issuance misuse of process for collateral purposes after process existed. The Count is limited to timely misuse, continuing misuse through the June 18, 2026 termination, and concealed misuse facts first documented through the September 18, 2025 FOIA production; earlier conduct is pleaded as context, motive, and tolling evidence.

147. Defendants misused issued process to accomplish collateral objectives not intended by that process: deterring Plaintiff's petitioning and criticism, impairing his court presentation, converting a Mayor's Office access inquiry into a continuing criminal burden, and creating or leveraging default consequences from known defective notice.

148. The post-issuance misuse included: coordinating a courthouse arrest around Plaintiff's own appeal hearing; using the arrest sequence to impair Plaintiff's credibility and presentation in court; continuing process after Fields acknowledged the recording contradicted Powell and that the charge should be dropped if the recording reflected Plaintiff's account; and using wrong-address notice to create a failure-to-appear warrant.

149. As to Pharr, Plaintiff does not sue her for filing a petition or testifying. The abuse-of-process theory against Pharr is limited to non-testimonial, out-of-court conduct allegedly showing collateral use of process after issuance, including the arrest-timing inquiry relayed through Fields, receipt and use of Plaintiff's complaint/family materials through personal Gmail, acknowledgment of the exculpatory recording, deletion of messages used in the safety-order context, and courthouse-lobby conduct. Plaintiff pleads these facts as post-issuance collateral-use evidence and not as a collateral attack on any state order.

150. Defendants' misuse of process caused loss of liberty, legal burden, reputational injury, business interruption, humiliation, fear, and speech/petitioning chill. The conduct was willful and malicious, supporting punitive damages against individual defendants.

**COUNT VIII: State Law – Negligent, Grossly Negligent, Wanton, or Bad-Faith Disclosure of Confidential Records**

*Against Fields and Hazelett individually, and City of Charleston to the extent liability permits*

151. Plaintiff incorporates the factual allegations above.

152. Count VIII is pleaded as a state-law record-handling and confidentiality claim. Plaintiff does not plead that the City or its employees are liable merely because a court filing existed. Plaintiff pleads that CPD personnel deliberately routed Plaintiff's complaint materials and bundled child/family-related records to an adverse political litigant's personal Gmail account outside ordinary court, subpoena, protective-order, in camera, or official-record channels.

153. West Virginia law governing child-welfare and child-abuse-and-neglect records, including W. Va. Code § 49-5-101 et seq., and ordinary duties of reasonable care in handling sensitive records imposed duties on Fields and Hazelett not to disclose or approve disclosure of such materials for non-law-enforcement, non-court, personal-email purposes.

154. Fields breached those duties by transmitting Plaintiff's complaint materials and bundled child/family-related materials to Pharr's personal Gmail account. Hazelett breached those duties by approving the transmission in writing despite the obvious confidentiality, litigation, and political-adversary context.

155. The disclosure was at least negligent and, as pleaded, grossly negligent, wanton, reckless, malicious, or in bad faith because it was deliberate, unnecessary, unhurried, and timed to litigation against Plaintiff.

156. Plaintiff seeks relief against Fields and Hazelett individually under the malicious-purpose, bad-faith, wanton, or reckless-conduct exception to political-subdivision employee immunity. Plaintiff seeks relief from the City only to the extent political-subdivision liability is permitted by W. Va. Code § 29-12A-4 and not barred by W. Va. Code § 29-12A-5. Plaintiff does not seek punitive damages from the City and does not plead insurance waiver.

157. Plaintiff did not discover the internal City/CPD disclosure records until the September 18, 2025 FOIA production, and pleads discovery rule, fraudulent concealment, and equitable tolling in the alternative.

158. As a direct and proximate result, Plaintiff suffered privacy injury, humiliation, fear, litigation disadvantage, reputational harm, speech/petitioning chill, and garden-variety emotional distress. Punitive damages are warranted against Fields and Hazelett individually.

## DAMAGES

159. Plaintiff pleads damages by category to avoid an unsupported lump-sum demand and to preserve proof discipline. The categories below are cumulative where legally permitted and alternative where necessary. Plaintiff does not seek double recovery.

160. Plaintiff suffered loss of liberty, two arrests, handcuffing, public humiliation, court-delay injury, appearance burdens, fear of arrest, prosecution pressure, and impairment of his ability to participate in hearings.

161. Plaintiff suffered reputational harm from being treated as a security/intelligence subject, being circulated through law-enforcement channels, being accused through PSO/prosecution processes, being publicly arrested, and having his protected activity framed as dangerous.

162. Plaintiff suffered speech and petitioning chill, including fear that additional complaints, FOIA requests, public criticism, City Hall appearances, or civic participation would trigger police or court retaliation.

163. Plaintiff suffered privacy injury and litigation disadvantage from the disclosure of complaint and family/child-related materials to Pharr's personal Gmail account. Plaintiff did not learn of the internal disclosure approval and transmission until the City's September 18, 2025 FOIA production.

164. Plaintiff suffered business and property consequences from the timely actionable conduct, including loss of time, missed business opportunity, lost income, impairment of renewal capacity, and interruption of his ability to preserve, renew, operate, sell, or monetize digital assets. Earlier business collapse facts and the November 2022 crash/proof-burden background are pleaded as context, petitioning purpose, damages context, and vulnerability evidence only; Plaintiff will avoid double recovery, will not ask this Court to decide the pending state crash appeal, and will prove causation by admissible evidence.

165. Plaintiff will prove business and digital-asset damages through registrar records, payment records, lapse records, ownership/control proof, comparable sales, appraisals if necessary, bank records, tax records, business records, and testimony. Plaintiff does not ask the Court at the pleading stage to accept a fixed speculative digital-asset valuation.

166. Plaintiff suffered increased proof costs and litigation burden from delayed FOIA production, refusal to accept or process complaints, missing or suppressed records, and the need to reconstruct facts from scattered records.

167. Plaintiff suffered garden-variety emotional distress, humiliation, fear, anxiety, and loss of ordinary enjoyment. Plaintiff does not plead medical diagnosis, psychiatric treatment, therapy bills, or special emotional-distress damages.

168. Plaintiff seeks nominal damages for each proven constitutional violation even if a jury awards no compensatory damages for that violation.

169. Plaintiff seeks punitive damages against individual defendants only. Plaintiff does not seek punitive damages against the City of Charleston. Punitive damages are warranted because the individual defendants acted with malice, retaliation, fraud, oppression, deliberate indifference, or reckless disregard of Plaintiff's rights.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Enter judgment in Plaintiff's favor on all counts proven;

(b) Award compensatory damages in an amount to be proven at trial, including property loss, business loss, lost income, lost business opportunity, loss of liberty, reputational injury, privacy injury, speech and petitioning chill, emotional distress, proof-impairment damages, and consequential damages;

(c) Award nominal damages for each constitutional violation;

(d) Award punitive damages against the individual defendants in an amount sufficient to punish and deter malicious, retaliatory, fraudulent, or recklessly indifferent conduct;

(e) Award pre-judgment interest where permitted by law and post-judgment interest under 28 U.S.C. § 1961;

(f) Award costs recoverable by a pro se litigant; Plaintiff does not seek attorney's fees under 42 U.S.C. § 1988 unless counsel later appears and such fees become legally recoverable; and

(g) Grant such other and further relief as the Court deems just and proper.

## EXHIBIT INDEX

*Plaintiff attaches the following limited pleading-stage exhibits. These exhibits are cited for plausibility, notice, motive, causation, favorable termination, and municipal-custom allegations. Non-document recordings, videos, additional records, witness materials, and impeachment materials are preserved for Rule 26 disclosures, discovery, motion practice, summary judgment, and trial, subject to redaction, sealing, and admissibility. Note: The underlying audio recording for Exhibit L is preserved and will be produced in the form directed by the Court or Clerk.*

A. November 1, 2023 CPD Officer Safety/Awareness intelligence bulletin.

B. March 12, 2024 CPD blocked-email chain acknowledging the freedom-of-speech issue.

C. April 21-22, 2024 extra-patrol/contact-reporting directive referencing Chief's email about Plaintiff.

D. April 22, 2024 Bobinger/Webb Fusion Center watch-list request.

E. June 27, 2024 PSO I order, No. 24-M20S-00200.

F. August 2, 2024 Fields/Hazelett disclosure approval and Fields-to-Pharr Gmail transmission.

G. Arrest-timing and August 2024 courthouse-arrest coordination communications.

H. February 25, 2025 Jones-to-Fields email concerning Mayor-requested run down.

I. February 26, 2025 Jones report-back to Mayor/Chief of Staff.

J. July 9, 2025 Fields email acknowledged Powell contradiction and charge should be dropped.

K. June 18, 2026 dismissal order and docket for Case No. 25-M20M-01822.

L. July 18, 2024 Mayor's Office call transcript concerning Powell report.

M. April 19-20, 2024 Webb/Redden/Powell/Goodwin/Dempsey chain concerning the November 2022 leaving-the-scene complaint.

N. April 23-24, 2024 Fields/Baker/Dempsey/Webb forwarding and blocked-communication chain.

O. June-September 2024 formal-complaints chain, including Bennett's statement that the Chief must be briefed to authorize a misconduct investigation.

P. March 11, 2025 Hill refile communication.

Q. April 7, 2025 Fields/Dempsey close-out communication.

## JURY DEMAND

170. Plaintiff demands trial by jury on all issues so triable.

## VERIFICATION

171. I, Shaheen Shafii, Sr., declare under penalty of perjury under the laws of the United States, 28 U.S.C. § 1746, that I have read the foregoing Complaint and that the factual allegations are true and correct to the best of my knowledge, information, and belief, except those alleged on information and belief, which I believe to be true.

Executed on June 29, 2026

Shaheen Shafii, Sr.
Pro se Plaintiff
4509 Chesterfield Ave.
Charleston, WV 25304
ss@federal.domains
304.380.3639